# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CELESTE FLYNN,** *INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF NATHAN E. FLYNN,* et al., | **CIVIL ACTION** |
| Plaintiffs, | **NO. 20-3082-KSM** |
| *v.* | |
| **OMEGA FLEX, INC.,** | |
| Defendant. | |

## MEMORANDUM

**Marston, J.**                                                        **September 29, 2021**

On July 23, 2018, Nathan E. Flynn, a firefighter with the Howard County Fire Department, responded to a fire at a house in Clarksville, Maryland.  (Doc. No. 1 at ¶¶ 69, 70.)  Shortly after Flynn entered the home, the floor collapsed beneath him, trapping him in the basement level crawl space, where there was an active fire and extreme heat conditions.  (*Id.* at ¶ 70.)  It was 22 minutes before the intervention team rescued Flynn, and he was taken to the hospital in critical condition.  (*Id.* at ¶¶ 71–73.)  Tragically, Flynn died shortly after arriving at the hospital, leaving behind a widow, Celeste Flynn, and three minor children, T.F., C.F., and B.F.  (*Id.* at ¶¶ 2, 5, 7, 9.)

On June 19, 2020, Celeste filed this action in the Court of Common Pleas of Philadelphia County in her individual capacity, as personal representative of the Estate of Nathan E. Flynn, and on behalf of T.F., C.F., and B.F.  (*Id.* at ¶¶ 1, 3, 4, 6, 8.)  The complaint asserts products liability claims sounding in strict liability and negligence, along with claims for wrongful death and survival, against Defendant Omega Flex, Inc.  (*See generally id.*)  Omega Flex designed,

manufactured, and sold the corrugated stainless-steel tubing — sold under the brand name TracPipe — that transported propane gas into the home.  (*Id.* at ¶¶ 60–61.)  Celeste contends that the house fire began when lightning struck and perforated the TracPipe, causing propane gas to leak and eventually ignite.  (*Id.* at ¶¶ 64–68.)  She claims that Omega Flex knew that TracPipe was susceptible to lightning-induced failures but continued to sell the product "because it did not want to lose market share."  (*See, e.g.*, *id.* at ¶¶ 55, 57.)  And despite knowing that TracPipe caused up to 75 lightning-induced fires per year and "could unexpectedly compromise floors in homes," Omega Flex did not issue any warnings to its customers or to the firefighting community.[1]  (*Id.* at ¶¶ 47, 57, 63.)

On June 24, 2020, Omega Flex removed the case to this Court (Doc. No. 1-1) and filed a motion to dismiss the complaint as barred by Maryland's fireman's rule (Doc. No. 5).  Plaintiffs oppose the motion, arguing that Pennsylvania, not Maryland, law governs, and Pennsylvania does not recognize the fireman's rule.  (Doc. No. 11 at pp. 14–23.)  In the alternative, Plaintiffs argue that even if we were to apply Maryland law, the motion to dismiss fails.  (*Id.* at pp. 23–26.)

## I.      *Choice of Law*

Because the parties dispute whether Pennsylvania or Maryland law controls, the Court must determine which state's law applies before turning to the substantive issues raised in the motion to dismiss.

### A.      *Legal Standard*

This is a diversity case, so the Court applies the choice of law rules of the forum state, Pennsylvania.  *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011) ("In an action

---

[1] During oral argument, Omega Flex's counsel noted that although TracPipe is "still being produced and sold outside of the United States," in 2011, "there was a voluntary discontinuance of the manufacture of the [TracPipe]" here.  (Doc. No. 31 at 5:19–24.)

based on diversity of citizenship, a federal court generally applies the choice-of-law rules of the jurisdiction in which it sits."). "Pennsylvania applies a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court' and directs courts to apply the law of the state with the 'most interest in the problem.'" *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007)); *see also Hammersmith*, 480 F.3d at 226–27 ("[W]e think it is now clear that Pennsylvania applies the more flexible, 'interest/contacts' methodology to contract choice-of-law questions."); *In re Tylenol (Acetaminophen) Mktg, Sales Pracs. & Prods. Liab. Litig. ("In re Tylenol")*, Civil Action No. 2:12–cv–07263, 2015 WL 2417411, at *2 (E.D. Pa. May 20, 2015) ("Pennsylvania employs a flexible rule which combines the significant contacts analysis of Restatement (Second) of Conflicts of Law § 145 and a governmental interest analysis." (quotation marks omitted)).

The Third Circuit has described this choice of law analysis as containing three steps. First, we must determine whether there is an actual conflict between the laws of the relevant states. *See Hammersmith*, 480 F.3d at 230 ("[T]he first part of the choice of law inquiry is best understood as determining if there is an actual or real conflict between the potentially applicable laws."). "If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary." *See id.*; *see also Budtel Assoc., L.P. v. Cont'l Cas. Co.*, 915 A.2d 640, 641 (Pa. Super. Ct. 2006) ("If no conflict exists, further analysis is unnecessary. If a conflict is found, it must be determined which state has the greater interest in the application of its law.").

If, however, the laws of the states differ, then the court moves on to the second step of the inquiry and "examine[s] the governmental policies underlying each law . . . classify[ing] the

conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *See Hammersmith*, 480 F.3d at 230. If, on the facts of the case, every jurisdiction's interests would be impaired by the application of a different jurisdiction's laws, there is a "true conflict" and under the third step in the inquiry, the court must "determine which state has the 'greater interest in the application of its laws.'" *Id.* at 231. If, however, "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws," there is a false conflict, and "we apply the law of the only interested jurisdiction." *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005). Finally, the Third Circuit recognizes an "unprovided for" case, "in which neither jurisdiction's interests would be impaired if its laws are not applied." *Id.*

If there is a true conflict, the court moves to the third step and "weigh[s] the contacts [of each state] on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *See Hammersmith*, 480 F.3d at 231 (quotation marks omitted).

### B.  *Discussion*

#### 1.  *Actual Conflict*

First, we find there is an actual conflict between Maryland law and Pennsylvania law. *Budtel Assoc., L.P.*, 915 A.2d at 641 ("[T]he first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states."). Under Maryland law, firefighters and police officers may not "recover for injuries attributable to the negligence that requires their assistance." *Flowers v. Rock Creek Terrace Ltd. P'ship*, 520 A.2d 361, 368 (Md. 1987). In other words, Maryland law acts as a near-absolute bar to a suit by a firefighter to recover for injuries caused by "the negligently created risk that was the very reason for his presence on the scene in his occupational capacity." *Id.* Pennsylvania courts, by contrast, have explicitly refused to adopt a fireman's rule. *See Mull v. Kerstetter*, 540

A.2d 951, 952–53 (Pa. Super. Ct. 1988) ("[T]he Pennsylvania Supreme Court is not predisposed to adopt the 'Fireman's Rule,' regardless of whether it be the version that firemen assume the risk of any and all injuries that may befall them while they are on duty or that the rule extends only to negligence which brings firemen to the scene."); *see also Breen v. Eagle Valley Homes, Inc.*, 57 Pa. D. &. C.4th 301, 306–07 (Pa. Ct. Comm. Pl. 2002) ("[T]he 'fireman's rule' does not preclude a volunteer firefighter from recovering for injuries sustained on property owned or occupied by another while extinguishing a fire.")*.*  Because Maryland law may prohibit Plaintiffs' claims at the outset, and Pennsylvania law would not, there is an actual conflict between the laws of the two states.  *Cf. In re Tylenol*, 2015 WL 2417411, at *3 (finding an actual conflict because "the plaintiff could gain maximum punitive damages under Alabama law and minimal, if any, punitive damages under New Jersey law").

Because there is an actual conflict between the laws of the two states on this issue, we move to step two and analyze whether the conflict is a "true" conflict.

### 2.    *True Conflict*

We also find a true conflict between the laws of Maryland and Pennsylvania.  Maryland's fireman's rule "is based in part on the notion that when an occupation exists wholly or partially for the purpose of confronting dangers posed to the public, it is inappropriate to allow the worker to recover for injuries resulting from the purpose for which he or she is employed." *Crews v. Hollenbach*, 751 A.2d 481, 495 (Md. 2000).  "Stated differently, a firefighter who is injured by a risk inherent in the task of firefighting may be barred from asserting claims for those injuries because it is the firefighter's duty to deal with fires[.]"  *Id.* (explaining that the "assumption of the risk analysis intrinsic in the fireman's rule focuses on the reasonably identifiable and inherent risks assumed by firefighters when they accept employment in an ostensibly dangerous

condition"); *see also Flowers*, 520 A.2d at 368–69 ("We agree that the fireman's rule is best explained by public policy. . . . [W]e hold that, as a matter of public policy, firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance.  This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront hazards on behalf of the public.").  Because Flynn was a Maryland firefighter confronting a fire at a Maryland home when he died, Maryland's public policy rationale is implicated by this case, and Maryland has a recognized interest in limiting the recovery of Flynn's heirs.  Because Pennsylvania law does not recognize the same procedural bar on suits by firefighters, *see Mull*, 540 A.2d at 954 (finding that the trial court committed an error of law when it relied on the fireman's rule and remanding "to afford the court below the opportunity to assess the sufficiency of the complaint under general principles of negligence law"), Maryland's policy interests would be harmed by the application of Pennsylvania law.

Pennsylvania likewise has an interest in this action that will be harmed by application of Maryland law.  Pennsylvania has a strong public policy interest in holding Pennsylvania manufacturers accountable for injuries that occur as a result of their defective products.  *See In re Air Crash Disaster at Mannheim, Ger.: on Sept. 11, 1982*, 575 F. Supp. 521, 524–25 (E.D. Pa. 1983) (explaining that the public policy behind Pennsylvania's strict products liability was to "make the manufacturer the guarantor of his products' safety" and concluding that "Pennsylvania obviously has an interest in applying its liability law to a resident manufacturer acting within its home borders"); *see also Salvador v. Atl. Steel Boiler Co.*, 319 A.2d 903, 907 (Pa. 1974) ("Our courts have determined that a manufacturer by marketing and advertising his product impliedly represents that it is safe for its intended use.  We have decided that no current societal interest is

served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect."); *Giovanetti v. Johns-Manville Corp.*, 539 A.2d 871, 873 (Pa. Super. Ct. 1988), *abrogated on other grounds by Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146 (Pa. 1997) ("Because six of the appellee corporations are Pennsylvania-based, Pennsylvania can certainly be viewed as possessing a legitimate interest in ensuring that Pennsylvania companies do not manufacture or distribute hazardous products which cause injury.").  Application of Maryland's fireman's rule would harm this interest because it could act as a procedural bar to the products liability claims brought against Omega Flex, a Pennsylvania manufacturer.

Because each state's interest would be impaired by application of the other state's laws, we must determine which state "has more significant contacts and a greater interest in its law being applied."  *In re Tylenol*, 2015 WL 2417411, at *2

### 3.    Factors

To determine which state has the "most significant relationship to the occurrence and the parties," the court must consider the "principles stated in § 6" of the Second Restatement of Conflict of Laws.  *See* Restatement (Second) Conflict of Laws § 145(1) (setting general standard for tort actions); *see also id.* § 146 (supplementing general standard and providing that "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless . . . some other state has a more significant relationship under the principles stated in § 6 . . . ."); *id.* § 175 (supplementing general standard and providing that "[i]n an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless . . . some other state has a more significant relationship under the principles stated in § 6 . . . .").  Section 6 counsels that we

should consider "the needs of interstate and international systems;" "the relevant policies of the

forum;" "the relevant policies of other interested states and the relative interests of those states in

the determination of the particular issue;" "the protection of justified expectations;" "the basic

policies underlying the particular field of law;" "certainty, predictability and uniformity of

result;" and "ease in the determination and application of the law to be applied." *Id.* § 6.  When

we consider these principles in the tort context, we focus in particular on:

> (a) the place where the injury occurred,

> (b) the place where the conduct causing the injury occurred,

> (c) the domicile, residence, nationality, place of incorporation, and place of business of
> the parties, and

> (d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2).  The Court must weigh these "contacts on a qualitative scale according to their

relation to the policies and interests underlying the [present] issue." *Shields v. Consol. Rail*

*Corp.,* 810 F.2d 397, 400 (3d Cir. 1987); *see also Cipolla*, 267 A.2d at 856 ("The weight of a

particular state's contacts must be measured on a qualitative rather than a quantitative scale.").

Beginning with the first factor, the parties agree that Flynn was injured in Maryland.

(*See* Doc. No. 11 at p. 20.)  We give this factor substantial weight.  *See LeJeune v. Bliss-Salem,*

*Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996) ("Where the site of an accident is not fortuitous, 'the

place of injury assumes much greater importance, and in some instances may be determinative.'"

(quoting *Shields*, 810 F.2d at 401)); *see also* Restatement (Second) of Conflict of Laws § 146

(making the "local law of the state where the injury occurred" the presumptive choice of law in

personal injury action); *id.* § 175 (making the "local law of the state where the injury occurred"

the presumptive choice of law in wrongful death actions).

In addition, the only basis for the parties' relationship is the fire itself, which occurred in

Maryland.  Flynn worked and resided in Maryland at the time of the accident, and his representatives are Maryland citizens.  Although Omega Flex is headquartered in Pennsylvania and it manufactured and marketed TracPipe there, these contacts do not outweigh Maryland's substantial contacts with the parties and facts in this case.  *See Knipe v. Smithkline Beecham*, 583 F. Supp. 2d 602, 616 (E.D. Pa. 2008) ("The mere fact that defendant resides in Pennsylvania and conducts some business there simply does not outweigh New Jersey's dual interest in protecting its citizens and regulating business conduct occurring within its borders.").

Therefore, we apply Maryland substantive law in deciding this motion to dismiss.

II.    *Motion to Dismiss*

Applying Maryland law, we find that dismissal is not warranted at this time.

A.    *Legal Standard*

"When reviewing a motion to dismiss under Rule 12(b)(6), a district court considers whether the plaintiff is entitled to offer evidence to support the allegations in the complaint." *Ghaffari v. Wells Fargo Bank N.A.*, 621 Fed. App'x 121, 124 (3d Cir. 2015).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B.    *Discussion*

As discussed above, Omega Flex contends that the complaint should be dismissed because all of Plaintiffs' claims are barred by Maryland's fireman's rule.  (Doc. No. 5-1 at pp. 21–22.)  Under that rule, a "fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational

9

capacity." *Flowers*, 520 A.2d at 368.  And the "fact that an asserted basis for recovery may be couched in terms of strict liability rather than negligence does not, in itself, render the fireman's rule inapplicable." *Id.* at 370 n.10.

Because *Flowers* is the seminal case on this issue, a review of the court's opinion is instructive.  In *Flowers*, a firefighter was injured when he fell down an open elevator well while fighting a fire at an apartment building.  *Id.* at 362.  He later filed suit for his injuries against the property owner, the security guard on duty at the time, the security company that employed the guard, and the elevator manufacturer.  *Id.*  The Maryland Court of Appeals found that all of the claims were barred by the fireman's rule.  It explained that the "common denominator" of the counts against the property owner, security guard, and security company "is the allegation of negligence or other fault in causing or failing to prevent the fire which ultimately led to Flowers's injury." *Id.* at 370.  As for the firefighter's products liability claims against the elevator manufacturer, the court reasoned that although he had not alleged "negligence in the creation of the fire that originally brought the firemen to the apartment building, an accident involving an open elevator shaft nevertheless is within the range of the anticipated risks of firefighting." *Id*.  Therefore, this claim was also barred by the fireman's rule.

Although the *Flowers* court dismissed the plaintiff's claims, it emphasized that the fireman's rule does not bar firefighters from recovering for all improper conduct.  *Id.* at 366.  In particular, the court noted that "the owner or occupant of the premises must . . . abstain from willful or wanton misconduct or entrapment," which "encompasses a duty to warn of hidden dangers, where there was knowledge of such danger and an opportunity to warn." *Id.*; *see also id.* at 369 ("Negligent acts not protected by the fireman's rule may include failure to warn the firemen of pre-existing hidden dangers where there was knowledge of the danger and an

opportunity to warn.").[2]  Plaintiffs argue that this exception applies because Omega Flex purposefully "failed to warn its customers and the firefighting community of the hidden hazards of TracPipe and its propensity not only to ignite fires in residential homes," but also to "unexpectedly compromise the floors in homes if the gas lines were routed beneath them." (Doc. No. 11 at p. 25; *see also* Doc. No. 1 at ¶ 63.)

"[A] pre-existing hidden danger in the context of the fireman's rule suggests a danger that exists because of concealment or deceptive appearance, something like fraud, put in the path of the firefighter, as would render the danger a trap." *Hart v. Shastri Narayan Swaroop, Inc.*, 870 A.2d 157, 164 (Md. 2005) (quotation marks omitted); *see also Flood v. Attsgood Realty Co.*, 608 A.2d 1297, 1300 (Md. Ct. Spec. App. 1992) ("Generally, recovery for injuries to fire fighters and police officers is allowed only where the condition amounts to entrapment . . . ."); *Steinwedel v. Hilbert*, 131 A. 44, 46 (Md. 1925) (describing hidden dangers exception, but then finding that firefighter's rule nevertheless applied because "the case is not rested upon any such concealment or deceptive appearance, 'something like fraud,' put in the path of the plaintiff, as would render the danger a trap" (quoting Pollock, Torts 528 (11th ed.))).  For this exception to apply, Plaintiffs must allege facts tending to show that the defective condition was hidden or preexisted the fire, that Omega Flex knew about the defect and its danger to firefighters, and that Omega Flex had an opportunity to warn the firefighters but failed to do so.  *See Flood*, 608 A.2d at 1300–01 ("If the [property owner] had created the danger [a hole in the floor] or otherwise knew of the danger and knew that the appellant would be on the premises looking for a drug suspect and had an

---

[2] The fireman's rule also does not apply when "the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk." *Id.* at 366 (quoting *Aravanis v. Eisenberg*, 206 A.2d 148, 148 (Md. 1965)).  In addition, "the fireman's rule does not apply to suits against arsonists or those engaging in similar misconduct." *Id.* at 369.  These exceptions are not at issue in this motion.

opportunity to warn the officer, the [owner] would have had a duty to warn the [officer] of the known danger.").

For example, in *Flood*, a police officer was injured when he pursued a suspect into an abandoned building and fell through a concealed hole in the floor on the second story of the building. *Id.* at 1298–99. Although the court ultimately held that the exception did not apply, it noted that the property owner "could be held to have engaged in willful and wanton conduct in allowing the hole in the second story flooring to exist . . . if the hole had come to [the owner's] knowledge and [the owner] failed to avail itself of a definitive opportunity to warn the officer." *Id.* at 1301 ("Since the proffered evidence does not support this thesis, no duty was owed.").

Here, Plaintiffs allege that Omega Flex's TracPipe is prone to fail when exposed to lightning and that when the tubing is perforated, the propane gas releases and ignites, creating a "blow torch" effect that causes fires and can "unexpectedly compromise floors in homes if the gas lines were routed under those floors." (*See* Doc. No. 1 at ¶¶ 34–35, 40, 55, 63.) Plaintiffs claim that Omega Flex knew about this dangerous defect, but consciously disregarded it when the company continued to sell TracPipe and failed to warn firefighters or homeowners about the likelihood that the tubing would fail and cause a fire in the home or destabilize the flooring. (*Id.* ¶¶ 39, 47, 57, 63, 86–87, 92 ("Omega Flex, in bad faith, consciously and deliberately disregarded the foreseeable risk that its product would fail during routine lightning storms and pose an extreme risk of injury to residential occupants as well as firefighters who are dispatched to extinguish the gas-fueled fires."), 93, 98–99.)

These allegations plausibly suggest that Omega Flex acted with willful and wanton disregard to a known, hidden danger.[3] *Cf. Hart*, 870 A.2d at 165 (finding that the hidden

---

[3] Omega Flex argues that this exception applies only when the defendant's conduct amounts to an intentional tort. (Doc. No. 12 at pp. 12–13 ("Omega Flex agrees that under Maryland law, the Fireman's

dangers exception did not apply where a fireman fell down an open stairwell because although the "manager of the Regal Inn was on the premises at the time the firefighters arrived and the firefighters were at no time warned about the existence of the stairwell," nothing in the record suggested that the manager knew or had a "reason to know that the stairwell constituted a hidden danger" and there was no evidence of "active concealment or deceptive appearance of the stairwell effectuated by respondent"); *Flowers v. Sting. Sec., Inc.*, 488 A.2d 523, 537 (Md. Ct. Spec. App. 1985) ("The anticipation of structural hazards on the part of a fireman precludes bringing a product liability suit against the carpenter whose stairway collapsed, the architect whose wall caved in, or the plasterer whose ceiling fell, in the course of a raging conflagration," unless "the hazard is not the product of the fire but pre-existed the conflagration and, therefore, could be deemed a hidden or unanticipated risk.").

Therefore, Plaintiffs' claims survive the motion to dismiss. That said, Omega Flex may continue to raise the fireman's rule as a defense to liability if, after discovery, Plaintiffs are unable to show that Omega Flex's actions were willful and wanton. *Cf. Colbert v. Norcold, Inc.*, 726 F. App'x 956, 958 (4th Cir. 2018) (finding the plaintiff's products liability claims were barred by the fireman's rule because the product manufacturer "issued seven recalls, commissioned several studies, and instituted logging protocols, all in an effort to reduce the risk

---

Rule does not bar recovery for officers and emergency personnel injured by criminally intentional actions . . . yet any comparable circumstances are entirely absent here.").) But the case law suggests otherwise. Although the "duty to refrain from wilful and wanton conduct proscribes acts committed intentionally," *Flood*, 608 A.2d at 1301, "[w]illful and wanton conduct is less reprehensible than intentional misconduct," *State Farm Mut. Auto Ins. Co. v. Hill*, 775 A.2d 476, 487 (Md. Ct. Spec. App. 2001). *Cf.* Misconduct, Black's Law Dictionary (11th ed. 2019) (defining "willful and wanton misconduct" as "conduct committed with an intentional or reckless disregard for the safety of others, as by failing to exercise ordinary care to prevent a known danger or to discover a danger"); *Entwistle v. Draves*, 510 A.2d 1, 2 (N.J. 1986) (finding as a matter of New Jersey law that to "constitute willful and wanton misconduct" and escape application of the fireman's rule, "plaintiffs must show that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences").

of fires attributable to their refrigerators. . . . Such responsive conduct is not willful or wanton.").

### III.   *Conclusion*

For those reasons, the motion to dismiss is denied.  An appropriate Order follows.